IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF GEORGIA
ATLANTA DIVISION

| | |
|---|---|
| UNITED STATES OF AMERICA,<br><br>v.<br><br>GELASIA MATIAS,<br><br>Defendant. | CRIMINAL ACTION NO.<br>1:20-CR-00187-LMM-RDC-1 |

## REPORT AND RECOMMENDATION

### Re: Government's Motion for Reconsideration

This matter is before the Court on the Government's Motion for Reconsideration of the Order granting Defendant's Motion to Reveal the Identity of the Informant (Doc. 38) and Motion to Require the Confidential Source to testify at the Evidentiary Hearing. (Doc. 56). The Government filed responses opposing these requests on September 22, 2020 (Doc. 45) and December 7, 2020. (Doc. 59). Following consideration of the parties' initial pleadings, oral arguments, and testimony offered during the evidentiary hearing held on December 1, 2021, this Court granted Ms. Matias's motions over the Government's objections. (R. 110; Doc.

125 at 121-122).[1]

On December 15, 2021, the Government filed a motion seeking reconsideration of this Court's Order and requesting that the undersigned hold its ruling in abeyance until all evidence it planned to introduce related to Ms. Matias's motions to suppress was admitted. (Doc. 119). This Court agreed and held the second evidentiary hearing on April 21, 2022. (R. 132).

The Government filed its supplemental brief on June 30, 2022. (Doc. 135). Ms. Matias filed her response on September 30, 2022. (Doc. 140). The time for the filing of a reply brief by the Government has passed. Following review of the Government's pleadings, the Defendant's response, and the evidence introduced during both evidentiary hearings, this matter is now ripe for judicial review.

## Factual Background

According to the Superceding Indictment, Gelasia Matias and Gonzalo Gonzales-Robles (A/K/A "Gonzo") knowingly and willfully conspired with each other, and others known and unknown to the Grand Jury, to knowingly and intentionally possess with the intent to distribute at least 50 grams of

---

[1] The evidentiary hearings were held to address two motions to suppress filed by Ms. Matias on July 20, 2020: Motion to Suppress Evidence (Doc. 33) and Motion to Suppress Statements (Doc. 32). Those motions will be perfected by the parties and reviewed by the undersigned once the Government's pending motion is resolved and the record is complete.

methamphetamine from March 19-20, 2020, in violation of 21 U.S.C. §§ 841(b)(1)(A) and 846. (Doc. 63).  On March 20, 2020, they allegedly aided and abetted each other, and others known and unknown to the Grand Jury, by knowingly and intentionally possessing with the intent to distribute at least 50 grams of methamphetamine in violation of 21 U.S.C. §§ 841(b)(1)(A), 841(a)(1) and 18 U.S.C. Section 2. (Doc. 63 at 2).

During the evidentiary hearings, the Government's witnesses offered the following evidence. In early March 2020, agents with the Drug Enforcement Agency ("DEA") directed a Confidential Source ("CS") to communicate with an inmate detained in a state prison facility (later identified as Mr. Gonzales-Robles) who they believed was orchestrating a narcotics distribution organization. (Doc. 122 at 112-113).  DEA Special Agent Jose Collazo testified that he has worked with the CS in the past and that the information he provided was later corroborated. (*Id.*). He also stated that his fellow agents informed him that the CS was reliable based on his prior involvement in multiple investigations and arrests throughout the country. (*Id.*)

In the pending matter, the officers began monitoring telephonic conversations (in real-time) between Mr. Gonzales-Robles, the CS and an unknown woman. (Doc. 122 at 12-14).  Over the course of two days, the agents learned  that the woman, later identified as Ms. Matias, would act as Mr. Gonzales-Robles's courier to assist in the

3

distribution of the narcotics. (*Id*. at 40-42 ). All of these conversations were recorded and admitted into evidence.[2]

During a three-way telephone call that occurred on March 19, plans for the proposed drug transaction were discussed between Mr. Gonzales-Robles, Ms. Matias and the CS. (Doc. 122 at 30-33). Despite the use of "coded" language, law enforcement officers were able to determine that Ms. Matias intended to deliver 20 kilograms of methamphetamine to the CS at Mr. Gonzales-Robles's direction the next day. (*Id.* at 10; 36-38). The conversation also revealed that the transaction would occur at around 11:00 am, that Ms. Matias was to receive $120,000 in cash in exchange for the methamphetamine and that the transaction would occur in a parking lot near her apartment complex. (*Id.* at 25-30; 37; 39). SA Collazo and his team were continually monitoring the conversations and preparing to surveil the anticipated meeting location.

On March 20, at approximately 11:22 am, Ms. Matias informed the CS that she would be delivering the narcotics to a different location because she was still attempting to secure transportation. (Doc. 122 at 42-42). Two minutes later, she told the CS that she would was on her way. (*Id*. at 46-48)   She also explained that she

---

[2]   Gov't Exhibits 1-10. (R. 112). All the telephone calls and text messages between the co-conspirators and the CS were recorded and preserved by the agents.  Although the conversations were in Spanish, they have been translated into English.

4

would be driving a blue Toyota Celica. (*Id.* at 125-126). Because SA Collazo had to quickly relocate in order to arrive at the new location, he not hear Ms. Matias's description of her car. (Doc. 122 at 56-58). However, he explained that the CS told him she would be arriving in a blue Toyota Celica. (*Id.*). The color, make and model of the vehicle was shared with members of the investigative team. (*Id.*).

Special Agent Jeffrey Cottet testified that he observed the blue Toyota Celica as the driver drove into the parking lot (Doc. 133 at 49-51). He told his fellow officers (via radio) that the driver (later identified as Ms. Matias) appeared to be looking for someone. (*Id.*). She then turned her vehicle around and began driving away from the area. (*Id.* at 52-54). SA Cottet immediately began following the vehicle and conducted a traffic stop with the assistance of Special Agent Cristian Naranjo and Task Force Officer ("TFO") Scott Pendergrass. (*Id.* at 57-58). While Ms. Matias was sitting in the driver's seat, SA Collet observed a cardboard box in the truck area that appeared to contain methamphetamine. (*Id.* at 60-61). TFO Pendergrass testified that he noted a strong chemical odor indicative of methamphetamine emitting from the vehicle. (*Id.* at 134). According to the officers, Ms. Matias consented to a warrantless search of her car after she was detained. (*Id.* at 135). The officers discovered 20 kilograms of methamphetamine inside the cardboard box. (*Id.* at 135-136; 161).

**The parties' contentions**

Ms. Matias, pursuant to *Roviaro v. United States*, 353 U.S. 53 (1957), sought the immediate disclosure of the identity of the CS in order to adequately prepare her defense. (Doc. 38). Because the CS had "direct conversations with [her] and would know her willingness or reluctance to deliver the box that is at the center of the allegations against her," she claimed, disclosure of the informant's name and contact information was required to allow a fair opportunity to prepare her defense. (*Id.* at 4). Ms. Matias also asserted that there could be additional telephonic conversations between she and the CS that had not been recorded and preserved, conversations she needed in order to properly investigate the allegations. (*Id.*).

In a related motion, Ms. Matias moved this Court to require the Government to produce the Confidential Source for the evidentiary hearing because she summited that his/her testimony was central to the legal issues pending before this Court - "whether the Government had probable cause to conduct a warrantless stop of [Ms.] Matias on March 20, 2020." (Doc. 56 at 1). Counsel for Ms. Matias explained that because she did not know how pertinent the CS's statements would be "in the link of the stop," she needed to be able to cross-examine him "because that's the person who says it's the person in the blue Celica,…if [the agents]… don't know they should arrest the person in the blue Celica, what is the justification for the stop?" (Doc. 125 at 102).

Furthermore, operating under the assumption that the CS was communicating with Mr. Gonzales-Robles (and another unknown woman) before Ms. Matias was an active participant, counsel argued that these preliminary conversations could provide insight into others' roles in the conspiracy. (Doc. 56 at 3-4).

The Government objected to both requests, arguing that *Roviaro* did not require early disclosure of the CS's identity. (Doc. 45 at 3, 5). It also noted that all of the recorded conversations and text messages involving the CS had already been provided to Ms. Matias pursuant to Rule 16 of the Federal Rules of Criminal Procedure. (*Id*. at 3; Doc. 125 at 109). As for Ms. Matias's demand that the CS be produced to testify during the evidentiary hearing, the Government cited its concern for the CS's personal safety if required to disclose his identity, asserting that his on-going role as an informant would subject him to retaliation by drug trafficking organizations. (Doc. 59 at 11). Counsel for the Government also averred that Circuit precedent did not require production of the CS solely to permit the Defendant to challenge whether probable cause had been established, stating that "we don't think that it is appropriate or necessary for the C/S to be revealed and subject to cross-examination at the suppression hearing. The question at issue is what did law enforcement know after following and determining they should make a traffic stop of Ms. Matias on March 20th." (Doc. 59 at 7-8; Doc. 125 at 109). Counsel also questioned the relevancy of

7

the CS's testimony stating that "because law enforcement can testify regarding why it believed the CS to be reliable" and that the CS's information had been corroborated by the recordings and text messages, the anticipated testimony was irrelevant. (Doc. 59 at 10).

After consideration of the initial pleadings and the parties' oral arguments, Ms. Matias's requests were granted. (R. 110; Doc. 125 at 121-122). The Government subsequently filed the pending motion for reconsideration of this Court's ruling. (Doc. 119).  The undersigned conducted a second evidentiary hearing where the Government called additional witnesses and introduced exhibits in support of its position regarding the legality of the traffic stop, the subsequent interview of Ms. Matias and its opposition to disclosure of the CS's identity. (R. 132).  In its supplemental brief in support of the motion for reconsideration, the Government reiterated that Eleventh Circuit precedent does not require the production of the CS in this context and that evidence presented during the second hearing established probable cause justifying the traffic stop. (Doc. 119 at 8-10; 15-16). In response to the Government's renewed objection, Ms. Matias maintained that disclosure of the CS's identity was required because he is "part of the chain of the probable cause determination in relation to the [traffic] stop of Ms. Matias." (Doc. 140 at 1).

After careful consideration of the parties' arguments, the evidence presented during the evidentiary hearings, and the applicable law, this Court finds that the Government's motion for reconsideration (Doc. 119) should be **GRANTED**.

## Legal Authority

Pursuant to *Brady v. Maryland*, 373 U.S. 83 (1963) and *Giglio v. United States*, 405 U.S. 150 (1972), the Government must disclose evidence favorable to the defendant and must disclose impeachment evidence. *United States v. Quinn*, 123 F.3d 1415, 1421 (11th Cir. 1997). The Government's *Brady* obligations were expanded by the amendment of Rule 5 of the Federal Rules of Criminal Procedure. Subsection (f)(1) provides:

> (f) REMINDER OF PROSECUTORIAL OBLIGATION.—
> (1) IN GENERAL.—In all criminal proceedings, on the first scheduled court date when both prosecutor and defense counsel are present, the judge shall issue an oral and written order to prosecution and defense counsel that confirms the disclosure obligation of the prosecutor under *Brady v. Maryland*, 373 U.S. 83 (1963) and its progeny, and the possible consequences of violating such order under applicable law.

In accordance with this new provision, prosecutors in this District are now advised that:

> Pursuant to the Due Process Protections Act, *see* Fed. R. Crim. P. 5(f), the government is directed to adhere to the disclosure obligations set forth in *Brady v. Maryland*, 373 U.S. 83 (1963), and its progeny, and to provide all materials and information that are arguably favorable to the

> defendant in compliance with its obligations under *Brady*; *Giglio v. United States*, 405 U.S. 150 (1972); and their progeny. Exculpatory material as defined in *Brady* and *Kyles v. Whitley*, 514 U.S. 419, 434 (1995), shall be provided sufficiently in advance of trial to allow a defendant to use it effectively, and exculpatory information is not limited to information that would constitute admissible evidence. The failure of the government to comply with its *Brady* obligations in a timely manner may result in serious consequences, including, but not limited to, the suppression or exclusion of evidence, the dismissal of some or all counts, adverse jury instructions, contempt proceedings, or other remedies that are just under the circumstances.

However, the rules discussed above do not provide a constitutional right to discovery in a criminal case. *United States v. Napue*, 834 F.2d 1311, 1317 (7th Cir. 1987). Therefore, "[i]t does not follow from the prohibition against concealing evidence favorable to the accused that the prosecution must reveal before trial the names of all witnesses who will testify unfavorably." *Weatherford v. Bursey*, 429 U.S. 545, 559 (1977). Likewise, the Federal Rules of Criminal Procedure do not "requir[e] the Government to supply witness lists or witness statements until that witness has testified on direct examination, unless such information is required sooner by *Brady* or *Giglio*." *United States v. Aiken*, 76 F. Supp. 2d 1339, 1343 (S.D. Fla. 1999). As a result, "[a] criminal defendant has no absolute right to a list of the government's witnesses in advance of the trial." *United States v. Cerpas*, 397 Fed. Appx. 524, 528 (11th Cir. 2010) (quoting *United States v. Johnson*, 713 F.2d 654, 659 (11th Cir. 1983)). See also, *United States v. Hancock*, 441 F.2d 1285, 1286 (5th Cir. 1971) (rejecting

10

argument that denial of motion for government witness list violated Fifth and Sixth Amendments and concluding that ruling on such a request was in the trial court's discretion). [3]

In regards to the disclosure of the identity of law enforcement informants, the Government maintains a privilege to withhold disclosure in certain circumstances. *Roviaro v. United States*, 353 U.S. 53 (1957). "The purpose of the privilege is the furtherance and protection of the public interest in effective law enforcement," although that privilege is limited. *Id.* at 59. *Roviaro* instructs that this Court must take into account "the particular circumstances of each case, the crime charged, possible defenses, and the potential significance of the informant's testimony." *Id*. at 62. The Eleventh Circuit has adopted a three-pronged inquiry when applying the *Roviaro* balancing test which considers: "(1) the extent of the informant's participation in the criminal activity; (2) the directness of the relationship between the defendant's asserted defense and the probable testimony of the informant; and (3) the Government's interest in not disclosing the identity of the informant." *United States*

---

[3] In *Bonner v. City of Prichard*, 661 F.2d 1206, 1209 (11th Cir.1981) (*en banc*), the Eleventh Circuit adopted as binding precedent all decisions of the former Fifth Circuit handed down prior to October 1, 1981.

v. *Tenorio-Angel*, 756 F.2d 1505, 1509 (11th Cir. 1985) (citing *United States v. Kerris*, 748 F.2d 61 (11th Cir. 1984)).

The Government's interest may be proven by showing that disclosure may endanger the informant or other investigations. *United States v. Gutierrez*, 931 F. 2d 1482, 1490 (11th Cir. 1991). Furthermore, non-disclosure is permissible in a pretrial suppression hearing "if the trial judge is convinced, by evidence submitted in open court and subject to cross-examination, that the officers did rely in good faith upon credible information supplied by a reliable informant." *McCray v. Illinois*, 386 U.S. 300, 305 (1967); *United States v. Alfonso, 552 F.2d 605, 618* (5th Cir. 1977) (explaining that disclosure of the identity of a CI used to secure a wiretap order was not required).

The Defendant bears the burden of showing that the CI's testimony "would significantly aid in establishing an asserted defense." *Tenorio–Angel,* 756 F.2d at 1511 (citing *United States v. Diaz,* 655 F.2d 580, 588 (5th Cir. Unit B 1981); *United States v. Booker*, 131 F3d. Appx. 234 (11th Cir. 2005). "[M]ere conjecture about the possible relevance of [the CI's] testimony is insufficient to compel disclosure." *Gutierrez,* 931 F. 2d at 1491. See also, *Rugendorf v. United States*, 376 U.S. 528, 34-35 (1964); *United States v. Ayala*, 643 F.2d 244, 247 (5th Cir. 1981). However, "Where the disclosure of an informer's identity, or of the contents of his

communication, is relevant and helpful to the defense of an accused, or is essential to a fair determination of a cause, the privilege must give way. In these situations, the trial court may require disclosure and, if the Government withholds the information, dismiss the action." *United States v. Godkins*, 527 F.2d 1321, 1326 (5th Cir. 1976).

### Discussion

In deciding whether disclosure is required, this Court must first determine whether the government has a valid reason for nondisclosure. *United States v. Tenorio-Angel,* 756 F.2d 1505, 1511 (11th Cir. 1985). As stated above, the Government asserts that early disclosure of the CS's identity could jeopardize on-going criminal investigations and the CS's safety. It notes that their concerns are genuine and verified by Ms. Matias's claims that even she has received threats since her arrest. The Government also argues that disclosure is unwarranted under these circumstances because "the threshold for impending the government's privilege to withhold the identity of a confidential informant is particularly high at the motion stage of litigation, and requests for disclosure are typically rejected where the sole purpose to be served is to attack the issue of probable cause." (Doc. 135 at 10). Because Ms. Matias cannot establish that the CS's anticipated testimony would significantly aid in establishing her defense, it submits, disclosure is not warranted.

The Government's concerns are valid reasons for nondisclosure. As previously stated, the Government's interests in protecting its confidential sources and preserving the integrity of its criminal investigations often justify nondisclosure. *Tenorio-Angel*, 756 F.2d at 1511. Additionally, the Supreme Court has concluded that a defendant's claim for early disclosure is not as consequential "where the issue is the preliminary one of probable cause, and guilt or innocence is not at stake." *McCray*, 386 U.S. at 311.

Although the Government's reasons for preventing disclosure are valid, this Court must consider Ms. Matias's interests in disclosure to determine if her interests outweigh those of the Government. *Gutierrez,* 931 F.2d at 1490; *Tenorio-Angel*, 756 F.2d at 1511.  Ms. Matias submits that immediate disclosure of the CS's identity is required because he was "a part of the probable cause determination in related to the [traffic] stop." (Doc.140). Furthermore, she avers that because the CS had direct communications with her regarding consummation of the drug transaction, the CS would "know her willingness or reluctance to deliver the box that is at the center of the allegations against her." (Doc. 38 at 4).

In consideration of the first factor of the test outlined in *Tenorio-Angel* - the extent of the informant's participation in the criminal activity - SA Collazo testified that the CS was an active participant in the events preceding Ms. Matias's arrest.  He

14

explained that the CS communicated with both Mr. Gonzales-Robles and Ms. Matias via telephone calls and test messages. Even though the communications only occurred over a two-day period, the records reveal the CS's repeated attempts to establish a rapport with the co-conspirators and to convince them to consummate the transaction. When a CS plays "an active or prominent role in [the] criminal activity" charged, a defendant may be successful in obtaining disclosure of his/her identity. *United States v. McDonald*, 935 F.2d 1212, 1217 (11th Cir. 1991). Accordingly, this Court finds that the CS played a prominent role in this alleged conspiracy and this factor weighs in Ms. Matias's favor.

Next, in order to carry her substantial burden of proof, Ms. Matias must establish that the second factor this Court must consider - the directness of the relationship between her asserted defense and the probable testimony of the CS - establishes that "the informant's probable testimony would bear a direct relationship on the defendant's defense such that it would "<u>significantly</u> aid in establishing…[that]…asserted defense." *McDonald*, 935 F.2d at 1217 (emphasis added). Although defense counsel suggests that the CS's testimony could reveal Ms. Matias was a reluctant co-conspirator (thereby negating intent or willfulness), the CS's subjective opinion concerning Ms. Matias's state of mind would constitute inadmissible speculation. Moreover, whether Ms. Matias's alleged hesitancy was

overborne in some manner by the CS (despite evidence that she engaged in multiple conversations involving details of the transaction and confirmed the meeting location independently of Mr. Gonzales-Robles), that theory is much too speculative to compel disclosure. *Kerris*, 748 F.2d at 614 (explaining that mere conjecture concerning the potential relevance of an informant's testimony did not compel disclosure.). Consequently, Ms. Matias has failed to establish that the production of the CS would *significantly* aid her in the preparation of her defense. See, United States v. Hare, 589 F.2d 242, 243 (5th Cir. 1979) (where court concluded defendant's theory that the CS's anticipated testimony would establish that he did not knowingly possess contraband was "simply too attenuated to be considered a necessary part of [his] defense.").

Ms. Matias also fails to carry her burden of proof regarding this second factor because she seeks disclosure of the CS's testimony based on her belief that he is "part of the chain of the probable cause determination in relation to the [traffic] stop of Ms. Matias." (Doc. 140 at 1). As noted above, a defendant's claim for early disclosure is not as compelling "where the issue is the preliminary one of probable cause, and guilt or innocence is not at stake." *McCray*, 386 U.S. at 311. And in our Circuit, "[The] rule is well-established that the Government need not disclose the identity of an informer when the sole purpose to be served is to attack the probable cause supporting a search warrant." *United States v. Mendoza*, 433 F.2d 891, 894 (5th Cir. 1970).

16

Notwithstanding this precedent, the Government argues that it has established probable cause based on the officers' testimony detailing Ms. Matias's direct participation in the planning and attempted execution of the transaction. This Court agrees. The officers' observations proves she was the woman the CS expected to meet. More importantly, as the Government emphasizes, Ms. Matias's own words corroborate the CS's information: "[t]he 11:49 AM call establishes that Matias, in fact, told the CS she was in a blue car, a "Toyota Celica" minutes before the traffic stop occurred." (Doc. 122 at 125-126; Gov. Ex. 3, Gov. Ex. 4 at Tab 26.). Because this evidence establishes probable cause to justify the traffic stop, disclosure of the CS's testimony regarding this issue is unwarranted.

As for the third factor, this Court has already acknowledged the Government's concern that pretrial disclosure would endanger the CS and jeopardize the integrity of on-going criminal investigations. It has made a sufficient showing of the need for nondisclosure, substantiated by the threats reported by Ms. Matias. In light of these genuine concerns, Ms. Matias has failed to demonstrate that her need for disclosure outweighs the Government's interests in nondisclosure. Thus, the undersigned concludes that the Government's privilege in nondisclosure does not give way, and that Ms. Matias's motions to compel disclosure and production of the are due to be denied.

## Conclusion

For the reasons stated above, this Court **RECOMMENDS** that the Government's motion to re-consider this Court's Order to disclose the identity of the Confidential Source and his/her production at the Evidentiary Hearing (Doc. 119) be **GRANTED.**

IT IS SO **RECOMMENDED** this 10th day of November, 2022.

*/s/ R. Cannon*
REGINA D. CANNON
United States Magistrate Judge